UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| B.D.V.S., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:25-cv-01968-SEB-TAB |
| | ) |
| KERRY J. FORESTAL Sheriff, in his official | ) |
| capacity as Warden of Marion County Jail in | ) |
| Indianapolis, *et al.*, | ) |
| | ) |
| Respondents. | ) |

**ORDER GRANTING IN PART PETITIONER'S MOTION FOR ATTORNEYS' FEES**

The Court granted BDVS's petition for a writ of habeas corpus on October 8, 2025. Dkt. 15.

His attorneys now seek $44,000 in attorneys' fees under the Equal Access to Justice Act (EAJA).

For the following reasons, BDVS's motion for fees, dkt. [30], is **granted in part**.

**I. Legal Standard**

Under the EAJA, a party prevailing against the United States in a civil action is entitled to

an award of fees and other costs "unless the court finds that the position of the United States was

substantially justified or that special circumstances make an award unjust." 28 U.S.C.

§ 2412(d)(1)(A). Accordingly, district courts will award attorneys' fees where (1) the claimant is a

"prevailing party;" (2) the United States's position was not substantially justified; (3) no "special

circumstances make an award unjust;" and (4) the fee application is timely submitted within thirty

days of final judgment and is supported by an itemized statement. *Golembiewski v. Barnhart*, 382

F.3d 721, 723–24 (7th Cir. 2004). The prevailing party also bears the burden of proving that the

hours requested are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## II. Facts

BDVS filed his habeas petition in this Court on September 28, 2025. Dkt. 1. In its decision granting the petition, the Court provided the following summary of the facts:

> BDVS is a citizen and native of Guatemala. Dkt. 14-3 at 2. He was apprehended entering the United States at the southern border in November 2018. Dkt. 1 ¶ 29. He was not detained or subjected to removal proceedings. Rather, he was released on his own recognizance. Dkt. 1-1. BDVS has complied with the conditions of that order. Dkt. 1 ¶ 30. He also petitioned for asylum. *Id.* ¶ 31.
>
> In May 2025, Immigration Judge Samia Naseem denied BDVS's asylum claim and ordered him removed from the United States. Dkt. 14-2 at 11–13. BDVS appealed that decision to the Board of Immigration Appeals, *id.* at 3–10, and the appeal remains pending.
>
> On June 8, 2025, ICE took BDVS into custody and transferred him to the Marion County Jail. Dkt. 14-1 at 71. On August 22, Judge Naseem ordered that BDVS be released subject to a $1,500 bond. *Id.* at 30–32. On August 28, the Department of Homeland Security appealed the bond determination to the BIA. *Id.* at 1–29. In doing so, DHS invoked its own regulatory authority, 8 C.F.R. § 1003.19(i)(2), to stay his release on bond pending appeal. Dkts. 10-1, 10-2. Accordingly, BDVS remains detained. Both Judge Naseem's immigration court and the BIA are instruments of DOJ's Executive Office of Immigration Review. *See generally* 8 C.F.R. § 1003.0; 28 C.F.R. § 0.115 *et seq.*
>
> BDVS filed his habeas petition on September 28. Dkt. 1. Two days later, DHS moved in the BIA for a discretionary stay of the bond order. Dkt. 14-4. That motion remains pending.

Dkt. 15 at 1–2.

BDVS argued principally that the regulation through which DHS stayed Judge Naseem's bond determination was unlawful. Dkt. 1 ¶¶ 69–79. Specifically, in 8 U.S.C. § 1226(a), Congress granted the Attorney General authority to detain or release certain noncitizens, but the regulation permits DHS to override the Attorney General's decision.

The federal respondents opposed the petition on grounds that BDVS's detention was mandated by 8 U.S.C. § 1225(b)(2) and did not violate the Fifth Amendment's due process clause. Dkt. 14. They did not directly respond to BDVS's argument that the automatic stay was unlawful.

2

The respondents acknowledged the issue but argued that relief was not warranted because, "on September 30, 2025," after the habeas action was filed, "DHS sought a *discretionary* stay." Dkt. 14 at 4 (emphasis added).

> The Board of Immigration Appeals has authority to stay an Immigration Judge's order redetermining an alien's conditions of custody when DHS appeals the custody decision. 8 C.F.R. § 1003.19(i)(1). DHS may "seek a discretionary stay (whether or not on an emergency basis) from the Board in connection with such an appeal at any time." *Id.* DHS may also "seek a discretionary stay pursuant to 8 C.F.R. § 1003.19(i)(1) to stay the [I]mmigration [J]udge's order in the event the Board does not issue a decision on the custody appeal within the period of the automatic stay." *Id.* § 1003.6(c)(5).

> This procedure provides additional safeguards that the automatic stay provision lacks. *See, e.g.*, *Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025) ("In sum, § 1003.19(i)(2) presents a serious risk of erroneous deprivation of [a petitioner's] private interests, and § 1003.19(i)(1) already provides a simple alternative that would safeguard those rights."). This emergency stay provision is appropriate as it "presents a narrowly tailored, less restrictive means whereby the government's interest in seeking a stay of the custody redetermination hearing may be protected without unduly infringing upon [petitioner]'s liberty interest." *Bezmen v. Ashcroft*, 245 F. Supp. 2d 446, 451 (D. Conn. 2003) (interpreting the predecessor to 8 C.F.R. § 1003.19(i)(1), 8 C.F.R. § 3.19(i)(1)); *see also Günaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn., May 21, 2025) (finding that found that the automatic stay "regulation itself includes an obvious alternative. The procedure set forth in 8 C.F.R. § 1003.19(i)(1) allows DHS to request a discretionary stay from the BIA "at any time" "(whether or not on an emergency basis)" which would significantly reduce the risk of erroneous deprivation without imposing significant burdens on the government).

*Id.* at 4–5.

The Court ruled on BDVS's petition on October 8, 2025. Dkt. 15. The Court rejected the respondents' argument that BDVS was subject to mandatory detention under § 1225. *Id.* at 3–4. The Court also rejected the respondents' argument that BDVS's detention was lawful because DHS had requested a discretionary stay of the bond order:

> The problem with the respondents' position should be obvious. The regulation gives the BIA authority to grant a discretionary stay. It has not done so. DHS has requested a stay, but the BIA has not granted it.

*Id.* at 7.

3

The Court granted BDVS's petition based on his principal argument—that the automatic stay was unlawful. In doing so, the Court referred to *Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763 (S.D. Ind. Sept. 22, 2025), in which this Court granted a habeas petition on the same grounds only two weeks before. In granting BDVS's petition, the Court noted:

> The respondents offer no reason to reach a different conclusion here. In *Campos Leon*, the Court cited a mountain of precedents uniformly resolving that DHS cannot lawfully apply the automatic stay to detain an alien who has been granted bond or granting preliminary injunctive relief from such detention. *Id.* at *5. *The respondents identify no contrary authority in this case, and they make no effort to distinguish the factual backdrops of this case and Campos Leon.* Accordingly, the Court reaches the same conclusion: DHS's application of the automatic stay to detain BDVS in contravention of Judge Naseem's bond order is contrary to the Constitution and laws of the United States.

Dkt. 15 at 6 (emphasis added).

BDVS's attorney, Karen Weinstock, seeks $44, 000 in fees, representing 46 hours of work by her and two associates. Dkt. 30-5; dkt. 34 at 16.

### III. Analysis

The respondents concede that BDVS is a prevailing party. They oppose his fee motion on three grounds: that their litigation position was substantially justified, that Ms. Weinstock seeks fees for tasks for which fees are not available, and that the hourly rate she claims is too high.

### A.    Substantially Justified

"To be substantially justified, the Government's position must be 'justified in substance or in the main' or 'justified to a degree that could satisfy a reasonable person.'" *Potdar v. Holder*, 585 F.3d 317, 319 (7th Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "The Government meets this burden if: '(1) it had a reasonable basis in truth for the facts alleged, (2) it had a reasonable basis in law for the theory propounded, and (3) there was a reasonable connection between the facts alleged and the theory propounded.'" *Id.* (quoting *Kholyavskiy v. Holder*, 561 F.3d 689, 691 (7th Cir. 2009)). "While the parties' postures on individual matters may be more or

4

less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161–62 (1990).

The respondents argue that their litigation position was substantially justified for two main reasons. First, they argue that the federal appellate and district courts are divided on their argument that BDVS was subject to mandatory detention under § 1225(b). Given that there is no controlling precedent in this circuit, and given the considerable number of cases decided in the government's favor, the respondents argue that there was a reasonable legal basis for the argument. Second, the respondents argue that the legality of the automatic stay regulation has not been decided by an appellate court, so there was a reasonable legal basis to defend its legality.

This Court finds that the government's legal position in opposition to BDVS's petition was not substantially justified.

The Court's obligation at this stage is to determine not only whether there was a reasonable basis for opposing the petition but also whether there was a reasonable legal basis for the position the respondents actually advanced. *See Potdar*, 585 F.3d at 319 ("The Government meets this burden if. . . it had a reasonable basis in law for the theory *propounded*.") (emphasis added). In response to the fee motion, the respondents offer arguments and citations to demonstrate that it was reasonable to defend the automatic stay. Dkt. 33 at 6–7. But the respondents did not offer these arguments and citations in response to BDVS's petition. As the Court noted in granting the petition, the respondents made no substantive legal argument why the automatic stay was lawful. The respondents have not carried—and cannot carry—the burden of demonstrating that there was a reasonable legal basis for the theory they propounded in defense of the automatic stay because they did not propound any theory at all.

If the respondents had offered their newfound legal arguments in support of the automatic stay while the petition was still pending, they still would not meet their burden of showing that their opposition was reasonable. The respondents are correct that no appellate court had, at the time of the order, ruled on the legality of the automatic stay regulation. But the legal principles underlying the Court's ruling were well-settled:

> "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The Court is not aware of any statutory provision authorizing the attorney general to delegate her authority over bond determinations, and the respondents do not cite any.

> "The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. And, "[i]n addition to the authority to delegate conferred by other law, the head of an agency may delegate" certain authorities "to subordinate officials." 5 U.S.C. § 302(b). The Court is not aware of any comparable statute or precedent authorizing the attorney general or any other official to delegate authority conferred to it by Congress to a separate agency.

> [. . .]

> In promulgating 8 C.F.R. 1003.19(i)(2), DOJ unlawfully empowered DHS to nullify decisions Congress specifically assigned to the attorney general.

Dkt. 15 at 5–6 (quoting *Campos Leon*, 2025 WL 2594763 at *4). The respondents did not confront those fundamental issues in response to the petition, and they do not confront them in their response to the fee motion. It is true that no appellate court had found the automatic stay regulation unlawful. It is also true, as the Court noted when it granted the petition, that the district courts to address the issue had unanimously resolved it in BDVS's favor, and the respondents still have not offered a directly contrary decision.  Dkt. 15 at 6. In short, there is no legal authority—save for the existence of the regulation itself—to support the government's position that the regulation was lawful.

The proliferation of habeas petitions litigating the § 1225 versus § 1226 question supports the government's stance that it was substantially justified in arguing that § 1225(b) required BDVS's detention. However, that position was not substantially justified in the factual context of BDVS's detention. BDVS did not ask this Court to find that he was detained under § 1226(a) and therefore entitled to a bond hearing. Indeed, an immigration judge had *already found* that BDVS was entitled both to a hearing *and* to release on bond. The question before the Court was whether DHS could unilaterally set aside that decision, and this Court remains unaware of any authority holding that it could.

**B.     Hourly Rate**

BDVS seeks fees at hourly rates of $1,000 for Ms. Weinstock and $800 and $500 for two associates. The EAJA allows a prevailing party to recover "reasonable attorney fees . . . based upon prevailing market rates for the kind and quality of the services furnished." 28 U.S.C. § 2412(d)(2)(A). Even so, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.* Scarcity of qualified attorneys alone does not justify a fee award above the statutory rate. *Pierce*, 487 U.S. at 571–72. Rather, the "special factor" exception to the statutory cap applies to "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Id.* at 572.

Where special factors apply, they justify exceeding the statutory cap. The dispositive factor in determining the compensable rate remains the market. *Id.* at 573 ("The 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel,' and 'the results obtained,'

. . . are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are."); *see also Sprinkle v. Colvin*, 777 F.3d 421, 427 ("The EAJA, like other federal fee-shifting statutes, contemplates that fee awards 'shall be based upon prevailing market rates' paid by clients.").

The parties agree that BDVS is entitled to fees above the statutory rate to account for inflation. BDVS argues that the inflation-adjusted hourly rate is $282.79, *see* dkt. 30-6 at 15;[1] whereas the respondents state that they "would not typically object" to an hourly rate of $260.76, dkt. 33 at 11.[2] Recent decisions from within the Seventh Circuit have awarded fees at inflation-adjusted rates between $230 and $260. *See, e.g.*, *Blanca L. v. Bisignano*, No. 4:24-CV-04228-SLD-RLH, 2026 WL 1470906, at *3 (C.D. Ill. May 26, 2026) ($256.25 and $258.75); *Roell v. Bisignano*, No. 24-CV-446-JDP, 2026 WL 1295674, at *3 (W.D. Wis. May 12, 2026) ($241.06); *Bitzegaio v. Dudek*, No. 2:23-CV-00561-JPH-MJD, 2026 WL 1018429, at *4, *6 (S.D. Ind. Apr. 15, 2026) ($239.26) *Zachary A. B. v. Bisignano*, No. 4:24-CV-04100-SLD-RLH, 2026 WL 312108, at *2 (C.D. Ill. Feb. 5, 2026) ($233.75).

BDVS argues, over the respondents' objection, that he is entitled to fees above the inflation-adjusted rate based on special factors. He seeks fees at rates of $1,000, $800, and $500 per hour for three reasons. First, Ms. Weinstock and her associates have decades of experience as specialized immigration attorneys. Second, when this Court and others experienced a flood of

---

[1] Ms. Weinstock filed a 23-page motion for fees, dkt. 30, *and* a 17-page memorandum of law, dkt. 30-6. This practice violates the Local Rules and should not be repeated. Counsel may file *one* brief in support of a motion, and it may not exceed 30 pages. S.D. Ind. L.R. 7-1(e)(1).

The Court further notes that the Ms. Weinstock bases her calculations on inflation data for January and March 2026, but this action was litigated in September and October 2025, and she filed her fee motion in April 2026.

[2] The respondents do not explain how they reached this figure. Dkt. 31 at 11.

immigration habeas petitions in 2025 due to intensified enforcement efforts and the government's new interpretation of the law governing immigration detention, experienced attorneys like Ms. Weinstock and her associates were scarce and in high demand. Third, habeas actions like this one involve a demanding combination of niche legal issues and short timelines.

BDVS has not justified hourly rates of $1,000, $800, and $500.

BDVS initially supported his fee motion with affidavits from other practitioners attesting that they have sought EAJA fees at similar rates and that Ms. Weinstock's services justify a similar rate. Dkts. 30-2, 30-3, 30-4 But these affidavits are not evidence of a market rate. They are evidence of the rates attorneys claimed in fee motions and evidence of the value *they* assign to a colleague's work—not evidence of rates *clients* have actually paid in immigration habeas cases.

BDVS offers no judicial precedent for a $1,000 per hour EAJA fee award. He cites two decisions from this District awarding EAJA fees at rates between $240 and $250 per hour. Dkt. 30 at 17. He cites as a "benchmark" a 2025 decision of the Northern District of Indiana approving a $795 hourly rate. *Id.* (citing *Lea-Max Corp. v. Gould Elecs.*, No. 1:23-cv-000164-GSL-SLC, 2025 WL 1813192 (N.D. Ind. July 1, 2025)); dkt. 34 at 12. But *Lea-Max* is not an EAJA case. Two corporate entities litigated a discovery dispute under Rule 37, and the court's inquiry was based on counsel's "actual billing rates for comparable work." *Lea-Max*, 2025 WL 11813192, at *3. This Court is faced with a different legal question, and, even under *Lea-Max*'s methodology, the Court could not award fees at the rates BDVS has requested because those rates are not supported by evidence of actual billing rates for comparable work.

It is true that Ms. Weinstock appeared repeatedly in immigration habeas cases in 2025, as such cases became a regular part of this Court's docket. Her experience and expertise were particularly scarce at that time, when immigration habeas cases were new to this District. She

9

correctly argues that such cases demand specialized knowledge and operate on tight schedules. These special factors justify exceeding the statutory rate. They do not justify multiplying the statutory rate by four, six, or eight times.

After the fee motion was fully briefed—and after this Court granted an EAJA fee motion in a different case at a rate less than Ms. Weinstock requested—Ms. Weinstock filed her actual fee agreements in this and another habeas case. Dkt. 35; *see also Campos Leon*, dkt. 35 (S.D. Ind. June 24, 2026). Ms. Weinstock represents in an affidavit that these agreements demonstrate the following. At the time this case was pending, she billed clients $800 per hour for immigration habeas cases. Due to an increase in demand, that rate increased to $1,000 in January 2026. Dkt. 35. Associates billed lower rates that increased as well. *Id.*

The agreements themselves tell a different story.

BDVS agreed to pay Ms. Weinstock a flat fee of $10,000. Dkt. 35-1 at 1. He agreed to pay attorneys at an hourly for "additional legal services . . . beyond the standard work," such as "routine and non-routine requests for evidence" and "audits." *Id.* at 2. There is no evidence that Ms. Weinstock billed BDVS for such work. BDVS also agreed that, in the event either party terminated the agreement, Ms. Weinstock would refund his $10,000 payment, less compensation (at an hourly rate of $800, $500, or $250) for work already completed. *Id.* at 4.

Ms. Weinstock did not bill BDVS at an hourly rate of $800, and he did not agree to pay her $800 an hour for the work reflected in her EAJA motion. He agreed that he would pay $10,000 total and that he would pay an hourly rate under circumstances that the record does not reflect have occurred.

When the calendar turned to 2026, Ms. Weinstock increased her hourly rates for unexpected work or in the event of a termination, but she *decreased* the flat fee for habeas petitioners to $7,500.

Dkt. 35-2. Thus, the amount she charged for the work claimed in this EAJA motion did not increase by 25%; it *decreased* by 25%.

"The best evidence of an attorney's market rate is his or her actual billing rate for similar work." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012). The rate Ms. Weinstock actually billed BDVS and other clients for the work at issue here was $10,000—or, divided by the 46 hours claimed, $217.39 per hour. This is less than the inflation-adjusted rate the government agrees is reasonable. However, "[i]nflation affects different markets, and different costs in the same market, in different ways." *Mathews-Sheets v. Astrue*, 653 F.3d 560, 563 (7th Cir. 2011). Therefore, "to avoid the possibility of a 'windfall,' courts may not award an inflation-adjusted rate that is higher than the prevailing market rate in the community for comparable legal services." *Sprinkle*, 777 F.3d at 421 (overturning *Matthews-Sheets* in part). The market rate supported by the record in this case is a $10,000 flat fee, or 46 hours at a rate of $217.39 per hour.

## C.     Hours Claimed

Finally, the respondents ask the Court to reduce any fee award by 8.8 hours. Their entire argument is:

> Finally, the Court should deduct hours not devoted to tasks requiring legal knowledge or expertise or are not related to working on the habeas petition (call with client's father (.9 and 5.2), discussions and liaising with family (1.1 and 1.2), preparing a summons, civil cover sheet, and exhibits for filing (.4)). *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (holding that an attorney may not seek reimbursement for purely clerical or secretarial tasks at an attorney rate, which are considered overhead); *Johnson v. Shalala*, 1994 WL 445090, *7 (N.D. Ill. Aug. 16, 1994) (attorney not entitled to bill for clerical tasks). The Respondents suggest that 8.8 hours be deducted for these types of tasks listed in the fee sheet (dkt. 30-5), reducing the amount to $9,048.37.

Dkt. 33 at 13–14.

"Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845

F.3d 313, 321 (7th Cir. 2017). At face value, tasks like communicating with the petitioner's family and preparing exhibits and documents for filing and service can be critical to developing and litigating the case. The respondents have not explained with any specificity why those tasks were not properly completed by an attorney in this case.[3]

### IV. Conclusion

The respondents' unopposed motion for extension of time to respond, dkt. [31], is **granted**. The Court has accepted and considered the respondents' response.

BDVS's motion for attorney fees, dkt. [30], is **granted** insofar as he is awarded $10,000.00 in full satisfaction of any and all claims for attorneys' fees, expenses, and costs that may be payable in this matter under the EAJA.

**IT IS SO ORDERED.**

Date:   6/29/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[3] If the Court adopted the government's positions on a reasonable hourly rate ($260.76) and the number of hours that may be claimed (37.2), the total fee award would be $9,700.27. The Court's methodology and the respondents' yield results that are only about 3% apart.

12

Distribution:

Anthony W. Overholt
Frost Brown Todd LLP
aoverholt@fbtgibbons.com

Karen Weinstock
Weinstock Immigration Lawyers
kweinstock@visa-pros.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov